Good morning, Your Honors. Tony Farmani on behalf of Mr. Black. Your Honor, this case is troubling because he should have never even been prosecuted to begin with. Now, Mr. Black has been in prison since 2008 for a crime where the only evidence implicating him in the shooting did not meet the threshold of constitutional – the threshold beyond reasonable doubt. Well, when you say he shouldn't have been prosecuted, he did have a preliminary hearing in the Superior Court. Correct, Your Honor. He did have a – he did. And bound him over for trial. Bound him over reluctantly, Your Honor, because the judge who heard the preliminary hearing testimony, which is substantially, if not identical, to what was presented at trial, except for the witnesses. Your defense at trial was it wasn't my client. The defense at trial, because the focus was the main – the one and only focus at trial was whether or not he was the shooter. Whether Mr. Black was the shooter. This is a pretty simple question. And the answer to that question is because of that yes, Your Honor. I wasn't there. It wasn't me. That was the defense at trial. For that particular charge, yes, Your Honor, that was the defense at trial. Well, the charge is attempted murder, right? Correct, Your Honor. And then the question is whether or not aiding and abetting under California law requires a separate charge or whether it is subsumed under the principle that an aider and abetter is punishable as a principle under California law, right? You're correct. It is – technically speaking, California law is not really established on that point quite so, so much so as you are. And it's not – it's not a – The cases seem to say that. Well, there are cases that say that being the case, nevertheless, if you are being prosecuted for a crime and there is no indication whatsoever that it would be an aiding and abetting liability attached to that. I'll give you an example, Your Honor, so that would make the issue a little more clear. But that's not the question, counsel. The question is whether or not under substantive California law an aider and abetter is punishable as the principle. And the answer to that question is yes, at least as I read the cases. Respectfully, Your Honor, I disagree with that because I think the question – The Supreme Court has said that? I think the question in this case is not necessarily what California law provides, but whether or not – Well, it has to be, does it not, if you're – if that's the basis for your due process violation. The due process violation is a separate violation in and of itself. It has nothing to do with California law. But your theory is that he did not have adequate notice under the Sixth Amendment to know what charge he was being charged with. A Sixth Amendment claim. Correct. Which is more productive. But we have to look to substantive California law in order to determine as a matter of substance whether or not an aider and abetter is punishable as a principle. And whether, given that fact, whether that is sufficient notice to meet the federal constitutional due process standard that he must know the charge that he's facing in order to mount a defense to it.  If that being the analysis and the answer to that question is no, because it is not – But is that the correct analysis? I'm just trying to figure out what framework to apply. It is a correct starting point. It is a correct starting point, assuming that the information, the language and information by itself is sufficient to meet the due process standards. And that is not the case. Tell me how you would have defended this case differently had you known that he was also being charged as an aider and abetter. A number of different things you could have brought up. For one example, you could have said he was in the car, but he didn't aid and assist anyone. Well, the court found, as a matter of fact, that there were only two people in the car and that he was one of them. That is a finding of fact by the trier of fact. Sure, but is that enough? Let's assume that to be true. Well, I'm going to qualify that for a moment, Your Honor, because I think there is very – there is zero evidence. If Your Honor allows me to explain this, because there is a subtle point here, and I'm sure you understand the point. And the point here is, Your Honor, that the only evidence that pointed to Mr. Black being in the car was that him being a passenger. And that evidence, the court found, was insufficient as a matter of law. I thought there was testimony at the preliminary hearing by one of the police officers as to a statement made. Not correct, Your Honor. There is nothing in the record, and I've tried to make it very clear in a breeze, that there was never – I don't know what the court of appeal was thinking. I don't know what record they were looking at, frankly. There is nothing in this record that we have in front of us based on the record that was presented in the California court of appeal. And at the preliminary hearing, the detective testified that the victim told him shortly after the shooting that your client was the person who shot him. Isn't that what the detective testified to? No, Your Honor. He did not testify to that. It was that it was his car, right? Is that what the confusion is? That's all he said. In fact, to his credit, Your Honor, the detective made it very, very clear that he did not – Carlos Dominguez, the victim here, did not identify Mr. Black as being present in the car. But it was his car. So did he present any evidence that – or it was at least sometimes his car. He drove this car, and people said that. So was there any evidence that he was out of town or any alibi evidence that he wasn't the person in the car at that point in time? I'll say two things to that, Your Honor. Number one, I don't think it's his burden of proof to show that he was away. I don't think he has to show an alibi. It's the state's burden to show that he was in the car. They tried to do that. To their credit, they did try to do that. They say they had one witness who was 75 percent sure, seven and a half months after the crime, when he was confronted by the detective twice with photos, with six-pack photos, saying, I'm almost positive he's the shooter. But that didn't measure up to beyond reasonable doubt, and for good reason, Your Honor. But the trial court believed that witness and said, I believe he saw the driver in the car. Believing. Believing not beyond a reasonable doubt. Well, he didn't believe beyond a reasonable doubt that he was the shooter, but he apparently believed he must have been in the car. How, Your Honor? I mean, it seems that the judge thought, okay, well, this witness saw him. He knows him. He knows it's his car. He's familiar with him. He must have seen him through the window, and in the commotion, he was confused about whether he was the shooter or not. That's what I'm extrapolating. The judge must have thought. Well, must have thought. You know, quite frankly, Your Honor, respectfully, Your Honor, we can speculate all we want here. But the truth of the matter is there was one witness, and he said that Mr. Black was the shooter. Okay. But your defense at trial focused on shaking the credibility of the state's evidence, cross-examining the witnesses, and asking the trier of fact not to believe it. I didn't hear in response to Judge Friedland's question any indication that you would have offered evidence that he was in Sacramento on the night of the shooting or some other evidence to put him anywhere but in the car. He didn't have to, Your Honor. And the reason for that is very simple. I mean, I put myself in Mr. Black's shoes, for instance. If I get charged with a crime and the allegations are throughout the entire proceedings up until the verdict, the allegations are that you're the shooter, I'm going to defend that charge based on me not being the shooter. But in answer to my earlier question, you still didn't tell me what additional evidence you would have introduced had you better understood that the aiding and abetting theory was being pursued by Mr. Black. He wasn't aiding and abetting. I mean, there's Mitchell v. Pruitt. I mean, there's plenty of case law from this circuit. Well, the trial court found that he was either the shooter or the driver, and that if he were the driver and not the shooter, that the driver had deliberately positioned the car in order to better give the shooter an opportunity to fire the shots, and that after the shooting, the driver of the car accelerated at a high rate of speed and quickly turned at the end of the block in order to make good escape, and that that was the evidence of aiding and abetting on the part of the driver. Isn't that what the trial court found? That would be great evidence if there was anything, any evidence implicating that he was a driver. You're correct. If there was even one single piece of evidence. Okay, so that evidence, if credited, would be sufficient under California law to establish aiding and abetting liability on the part of the driver in a drive-by shooting. If you identify the driver. Identification of the defendant is the essential part of the crime. Okay. That's the argument, Your Honor. Do you want to save some time for everybody? Absolutely, Your Honor. Thank you. Good morning, Your Honors, and may it please the Court. Deputy Attorney General Jonathan Krause on behalf of Respondent. Your Honors, the District Court's denial of habeas relief in this case should be affirmed because Petitioner cannot pass the D-1 or D-2 gateways, and because he can't show actual prejudice in any event. Now, as to the D-1 issue, I think Petitioner is trying to make this argument about substantive California law and what actual notice he could have had based on that. We can't even get to that point because Petitioner has not shown and indeed cannot show that there is any controlling Supreme Court precedent governing this claim. As the United States Supreme Court made expressly clear in Lopez, the Court has never ruled on such an issue, and indeed the Court found How do you get around the Shepard case? If we file a Shepard against Reese, you lose on the notice issue, don't you? No, Your Honor. We don't. Okay, tell me why. First of all, Shepard as Circuit Court precedent, and this is what the Lopez Court found, is entirely irrelevant to this issue because it is not controlling Supreme Court precedent. So that's number one. Even if this Court were to analyze this claim or in this case under a de novo standard and apply Shepard, Shepard is still an entirely different case. Shepard deals with a 40-year-old decision of this Court that this Court has found on many times since to be a very narrow ruling dealing with an extreme set of facts where a defendant was essentially, I think this is the Court's word, ambushed by the prosecution. The Court found there to be a litany of prosecutorial misconduct violations there. That is simply not what we have here. Moreover, in that case, the issue was notice for felony murder, whereas this is notice for aiding and abetting liability. As Your Honor pointed out, The issue is whether he had notice of a claim, of a position that he should have had the opportunity to defend, and because he didn't get notice, he claims he did not have that opportunity. But I understand his argument. But our first point and the primary point that I want to urge, as I did in my briefing, is that because there is no controlling Supreme Court authority on this issue, as the Lopez Court made clear, Shepard and cases like Shepard simply have no relevance whatsoever. The Court in Lopez rejected precisely the same legal argument petitioners are making here today, which is that there is general Supreme Court authority dealing with notice. However, the Court found that general Supreme Court authority is insufficient to provide the specific rule the petitioner wants, and the Court also found, as I was saying, that a petitioner cannot rely on circuit court precedent like Shepard to sharpen or refine a general position of Supreme Court authority into a specific rule that the Court itself has never actually ruled or announced. So for this reason, we can't even get to Shepard here, or cases like Shepard. But again, even if we did under a Dover review, Shepard is a fundamentally different case. And moving on briefly to the D2 issue, petitioner challenges several. A question about what the trial court found. So at ER 498, the judge says that he doesn't find beyond a reasonable doubt that it was willful, deliberate, or premeditated, and says he's going to find a lesser included offense. Can you explain to me what the lesser included offense was that was the conviction at that point? To be honest, Your Honor, I'm not entirely sure. I know that he was convicted of attempted murder. I'm not sure what the lesser included offense would have been at that point. What I'm wondering about is that language where the judge says, I don't find that it was willful, deliberate, or premeditated, but then it seems like to have attempt, you need to have something like willfulness anyway. And I'm a little bit confused about what the crime was if it wasn't a willful crime that allowed attempted murder to be the conviction. Your Honor, to be honest, I'm not 100 percent sure about that language. I know that he was ultimately convicted of attempted murder. Pursuant to that conviction, the court necessarily must have found that he proceeded in a willful and premeditated way. I think certainly the facts support that, given that this was a drive-by shooting. Now, petitioner takes issue with the factual determinations made by the court of appeal about what Detective Brandon, the detective, told, or what he testified to at the preliminary hearing regarding what Carlos, the victim, told him. But we would urge this court to address this or analyze this claim that petitioner makes, not under D-2, but actually under D-1, given that it was, as was the case in Lopez, a mixed question of law and fact regarding the court of appeal's factual determination in an effort to reach a legal conclusion about whether petitioner had been put on adequate notice. So to the extent petitioner challenges factual determinations made by the court, he must do this under D-1. But again, due to a distinct lack of controlling Supreme Court precedent, any D-1 claim here must fail. I'd like to move on in my remaining time to talk about the prejudice issue. Petitioner simply can't show actual prejudice, even if he can get through D-1 or D-2. His defense at trial, as Your Honors noted, was that he was not there at all, that he wasn't present, the witnesses couldn't identify him, falsely identified his car, the police had it out for him, whatever the defense actually was. But given that defense, it is difficult, if not impossible, to see how, had he been given, say, greater notice that he could be convicted as an aider and abetter, beyond the information, beyond the preliminary hearing, it's difficult to see how his defense would have changed or how the result of the trial would have been any different. Beyond that, petitioner tries to offer, in the reply brief and then again here today, an alternate defense that he could have presented, namely that he was in the car as the driver, but somehow did not share the intent of the shooter. But there's simply no reason, based on the record, to suspect that such a defense would have worked any better. Beyond the fact that this is a speculative defense, based on evidence he did not present and evidence he cannot talk about because he doesn't know about it, the bottom line is that this defense was entirely inconsistent with the defense that he did present, that he wasn't there, and, and this is the more important point. Was his defense that he wasn't there or that he just wasn't the shooter? No, his defense was that he wasn't there, that it was mistaken identity, that the witnesses couldn't have identified him, never mind the fact that. Did he ever say he was somewhere else? I don't believe he said he was somewhere else. He just said that the witnesses couldn't place him there. They said that the witnesses, despite the fact that Roberto, the witness in the back seat, identified him, I believe he said with 75 percent certainty that it was, that he was the shooter. He claimed essentially he wasn't there at all, that there was, it was all a case of mistaken identity. But Black didn't testify, did he? No. Okay. But that was his defense presented. So that was, that was the inference that counsel asked the trier of fact to draw. Correct. From the weaknesses in the state's testimony. Correct. But the trial judge rejected the defense argument and returned a verdict of guilty. Correct. His father testified. Was he the only defense witness? Your Honor, I'm not 100 percent sure if he was the only. There were only at most one or two that testified. I can't recall if it was anyone beyond the father. So was there any evidence putting him in the car other than the testimony that he was the shooter? Yes, Your Honor. There was evidence putting him in the car. And what was that? The fact that the witnesses, including Carlos, identified the car itself, the silver Chrysler, that was closely identified with Petitioner. Carlos lived, I think, several houses down from Petitioner, was familiar with the car. But they also knew that the brother sometimes drove the car and other people as well? Sure. But this was sufficient evidence to place him, at the very least, in the car. You take not only the evidence of the car, the fact that the witnesses said on several occasions they had only ever seen Petitioner drive in that car, both before and after the shooting, and also the fact that— Is that right? Were there witnesses who said they'd only seen Petitioner in the car? Because I thought the testimony was that the brother drove the car also, that he wasn't the only driver of the car. Carlos, the victim, the main victim in the front seat, said that he had only ever seen Petitioner drive in that car before and after the shooting. So there was evidence placing him in the car. Do you know where that is in the record? Off the top of my head, I do not. It would be certainly in the interview that Carlos gave to Detective Brennan, I'm fairly certain. The important point is this, though, is that even if he were in the car as merely the driver, as Petitioner would hope to present, saying he could have presented this alternate defense, not only was there evidence that this was his car, that he was in the car, Carlos also made a physical identification that matched Petitioner's physical characteristics. The record here shows that the car— Is it that he's heavier? Correct. So do we know anything about who the other person was that this is comparing to? No, we don't, Your Honor. But this was evidence, again, painting or creating a factual basis in support of the Court of Appeals' finding. We're not talking about sufficiency of evidence per se, but whether there was a factual basis supporting the Court of Appeals' factual determinations here. The other point I want to make is that the car, the evidence shows that the car pulled up very closely alongside the victim's car, within about two or three feet. The shooter reached his hand out the partially open window, shot several times into the car, before the driver sped away at a very high rate of speed. So you take this evidence of the getaway driver and his actions, combined with the fact that the trial court found this was very clearly a gang-motivated offense, that Petitioner was a self-admitted Durock Cripps gang member, all of this presents sufficient evidence to say that if Petitioner had presented a defense that he was in the car but somehow did not share the intent, that defense would have failed. There's no reason to suspect that Petitioner was somehow just a mere innocent bystander in all of this. If he had been just a passenger, could he have been an aider and a better? If he had been in the back seat, say, possibly, but there's no evidence of that. And there's certainly no evidence that he was anything but either the shooter or the driver. And the court expressly found there were only two people in the car. Correct. Correct, Your Honor. So he had to be one or the other. So if there are no further questions, I'm prepared to submit. Thank you. Mr. Armani? Let me just comment. I brought up the California law, and this is a quote from the California Court 2013. It is unsettled whether California's short-form pleading practice, without more, confers constitutionally adequate notice of the prosecution's decision to proceed on an implicitly charged alternative legal theory. But that's not the question I was asking. The question I was asking was whether or not under California law, an aider and a better is punishable as a principle. And the answer to that question is yes. Yes, but it's not clearly established that even of itself is sufficient for a due process analysis. What's your response to the state's argument that there is no United States Supreme Court case directly on point that requires that as a matter of the Sixth Amendment? D-2, 2254-D-2. We have two provisions. That's not a Supreme Court. That's a statute. That's not a Supreme Court decision. No, I understand what you're saying. You could win on habeas either under D-1 or D-2. So you can see there is no Supreme Court case that directly addresses this issue. In light of Lopez, Your Honor, although I completely disagree, I think that this case is much worse than Lopez. Lopez, the defendant in that case, had noticed at the preliminary hearing that he would in fact be charged as an aider and a better or prosecuted as an aider and a better. And then he was given notice before closing argument. This happened at the end of the case. And I don't know where the court can point to or I don't know where the trial court, trial court clearly couldn't point to anything that shows that Mr. Black was in that car other than being a shooter. If in fact the testimony from Carlos Dominguez was insufficient as a matter of law to show that he was in a car, meaning being a shooter, what evidence do we have to point that he was anybody but the shooter? Well, let me ask you the question that Judge Faber was wrestling with. Do we need to overrule Shepard in light of Lopez? Your Honor, Shepard compared to all the cases that I've cited in the brief, there's so many cases that are on point. There are cases… You're not particularly hanging your hat on Shepard. Not necessarily, Your Honor. But what I'm saying is you don't need to… And not necessarily means you may be or you may not be. I'm trying to get… I'm not hanging my hat on it, Your Honor. I am relying on a number of different cases including the Shepard case. But I guess your argument is I don't need Shepard to win. I don't necessarily need Shepard to win. Counsel, it's a yes or no question. I mean if you do, then it is a case that you're relying on. I don't need it to win in the sense that, Your Honor, if you take it out of D, if you go to D2 and make a determination that it was a factual, erroneous factual determination by the court, by the court of appeal, which clearly there is. But that requires us to reweigh the evidence, and we don't do that on appeal. If there was evidence, you're right. Because I thought your argument was he didn't have notice. But what's the factual? I thought you were making really a legal argument about notice. What's the factual part? I want to make this very clear here because I think this is a very subtle point but easy to forget. The evidence here pointed, one, one piece of evidence said, this is Roberto, saying that he was the shooter. Period. There was no other evidence other than Mr. Black having access to that car before and after the shooting that he was the driver or otherwise present in the car at the time of the shooting. Nothing. Zero evidence. The court of appeal said, on the notice issue, said the reason why we're going to uphold this decision is because Mr. Black, in fact, had notice because at the preliminary hearing he came out that he was the driver. There is nothing in there that says he was the driver. And the trial, in fact, credited Roberto's testimony. Credited it to enough, not enough for it to be beyond the reasonable doubt. We need beyond the reasonable doubt for a criminal conviction to be sustained. Well, it credited it to the point that he puts him in the car. How? Well, because the court said, I find as a matter of fact, that he was in the car and there were only two passengers. There was nobody saying... So doesn't that credit Roberto's testimony? But don't we need anything, Your Honor? If Mr. Roberto Villarreal is saying that he was the shooter, I'm certain that he was the shooter and the shooter is the passenger. Everyone agrees that the shooter here was the passenger. But you could believe Roberto's testimony to the extent that he puts Black in the car. Can you not, based on that testimony? No, Your Honor, because if he's the driver... My question is a very subtle one, too, counsel. I guess the question is what's your answer to my question. The answer to that question is you cannot take, permissibly, you cannot take Roberto's testimony to establish that Mr. Black was in the car. Why not? It's not inconsistent with the finding that Black was in the car, is it? It is, Your Honor. Because if he's the passenger in the car, which is who the shooter was, the passenger, and if the testimony says that he was the shooter, he was the passenger, and you say, you know what, your testimony is good, but it's not good enough for a criminal conviction, then how can you jump from that and say, well, I'm going to believe he was in the car? Why couldn't you take that testimony as proof beyond a reasonable doubt that he was in the car? Maybe you could, but the trial judge didn't do it, Your Honor. The trial judge felt... He made an express finding to that. The trial judge made an express finding that I cannot find beyond a reasonable doubt based on Roberto's, it says it right here, quote, Roberto's testimony that Mr. Black was the shooter. Okay, I think we understand your point, and you're well over your time. I appreciate it, Your Honor. Thank you very much for giving me the opportunity. The case is argued as submitted for decision.
judges: Tallman, Friedland, Faber